**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRANDY HARRISON,**

     **Plaintiff,**

v.                                             **CASE NO.: 8:17-cv-1369-T-02CPT**

**CITY OF TAMPA, a municipal**
**Florida Corporation, and**
**TECHSTAFF, INC., of TAMPA,**
**a Florida entity operating in Florida, and**
**ADAM MAINZER, in his person capacity**

     **Defendants.**
_____/

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, the City of Tampa, ("Defendant" or "City"), pursuant to the Court's Case Management and Scheduling Order, (Doc. 61), hereby files this statement of undisputed facts in support of the Defendant's motion for summary judgment. The parties agree that the following facts are not in dispute for purposes of summary judgment:

1. The City of Tampa Water Department ("Water Department") is one of many departments in the City.

2. The director of the Water Department is Chuck Weber. (Marple 38:24-25).

3. Separate and apart from the Water Department is the City's Human Resources Department ("HR").

4. The director of the City's HR is Kimberly Crum. (Marple 4:2-5).

5. All terminations and formal disciplinary actions for City employees must be approved by Crum. (Marple 36:19-37:1).

6. The Plaintiff was employed by the staffing company Techstaff as a work order technician. (Doc. 36 at ¶ 17); (Pl. 17:22-24, 21:15-17, 24:14-20).

7. Techstaff contracted with the City to provide staff supplements and, as part of those services, the Plaintiff was assigned to work with the City starting in April 2016. (Doc. 36 at ¶¶ 18-19); (Pl. 23:16-21).

8. The Plaintiff's assignment with the City was in the Water Department. (Doc. 36 at ¶ 20).

9. The Plaintiff's immediate City supervisor for her assignment in the Water Department was Ron Calderoni, the City's Water Distribution Senior Team Leader. (Pl. 24:21-24); (Marple 61:24-62:5). Calderoni had no authority to terminate employees or otherwise take formal disciplinary action against them.

10. Calderoni reported directly to Eli Franco, the City's Water Distribution and Consumer Services Manager, (Pl. 24:21-25:2); (Marple 36:11-12, 44:14-17), who reported to Weber.

11. Tim Johnson, a Utility Technician II (Interim Team Leader), was not in the Plaintiff's chain of command with the City and had no supervisory role over the Plaintiff. Johnson had no authority to take any disciplinary or other action against the Plaintiff that affected her assignment with the City.

12. The City is an equal opportunity employer. In the City's Personnel Manual, sections B1.1 and B1.2., the City specifically prohibits discrimination and harassment based on protected characteristics, including sex. (Marple 6:1-11); (BS# 000914-18). The Personnel Manual also provides a complaint mechanism for sex harassment claims. (Marple 15:8-11);

(BS# 000914-18). If the allegations of harassment are sustained as a violation of City policy, the harasser can be terminated. (BS# 000914-18).

13. Even though the Plaintiff was not an employee of the City, she could still make a complaint of alleged sex harassment to the City's HR for investigation. (Marple 8:15-9:5).

14. All complaints of sex harassment received by the City are investigated by the City's HR. (Marple 4:25-5:14, 15:8-11, 54:23-55:19). The investigation conducted by the City's HR is independent of the department involved. (Marple 4:25-5:14, 15:8-11, 16:17-18:6, 54:23-55:19).

15. In addition to being able to complain to the City, the Plaintiff could utilize any complaint mechanism established by her employer Techstaff. (Marple 8:15-9:5).

16. On May 25, 2016, the day after the report, the Plaintiff was called into a meeting with Franco, Pat Leonard, the City's Water Distribution Operator Supervisor, and Calderoni to discuss the matter. (Doc. 36 at ¶ 36); (Pl. Ex. 7 at ¶ 6); (Pl. 35:13-36:3); (Marple 46:19-47:15, 48:7-17).

17. At the May 25th meeting, the Plaintiff expressed that she wanted the behavior by Johnson to stop, but she did not want him to get into trouble. (BS# 000760, 766-68).

18. The Plaintiff provided the City with notes that Johnson allegedly left her. The notes asked the Plaintiff to "[t]ake a picture of yourself" and send it to him, asked her if she would like to meet for dinner and whether they were still on for a happy hour, asked other non-work related questions, and commented that she looked "good as hell." (Pl. 30:13-31:9, 31:24-32:10, Ex. 1).

19. The Plaintiff further claimed that Johnson had been contacting her via text

message and Facebook message, mostly outside of work hours. (Pl. 38:2-10, Ex. 2). The Facebook messages included comments such as: "you look Amazing," "Damn you are so Sexy," "You have a lovely smile," you are an "attractive Woman," "Your legs are so Sexy, I can spoil you," "Sexy Red," "your [sic] a very Sexy and Pretty Woman," and others along those lines as well as emojis. (Pl. Ex. 2). At the beginning of the communications, the Plaintiff responded by thanking Johnson and sending smile emojis back to him. (Pl. Ex. 2). At one point, though, she stated that "[Johnson] your [sic] doing too much.. Smh." (Pl. Ex. 2). In response, Johnson replied "Okay, good night." (Pl. Ex. 2).

20. In addition to the communications, the Plaintiff claimed that Johnson provided her gifts of shoes and underwear, which she admitted to keeping in a box but claimed the gifts made her uncomfortable. (Marple 46:6-18); (Pl. 106:19-108:1).

21. On May 26, 2016, Johnson was called into to a meeting with Lukban, Franco, and Leonard regarding the Plaintiff's allegations. (BS# 000762-65). Johnson admitted to leaving the Plaintiff notes and contacting her outside of work via text message and Facebook. *See* (BS# 001161); (BS# 000784-85). Johnson was directed to stop the non-work related contact with the Plaintiff and warned of the consequences should he fail to heed to the directive. (Marple 48:22-49:9).

22. As a follow-up to this directive, Franco issued Johnson a "Letter of Counseling" on May 31, 2016. (BS# 001161); (Marple 48:22-49:9). The letter specifically explained:

> As a result of an initial complaint brought to our attention by [the Plaintiff], we asked you as series of questions regarding your actions involving this employee. You confirmed by your responses that you had contact with this individual outside of normal work hours through a variety of communication methods, and that the nature of that contact was personal not business. It was pointed out to you that the employee wishes for you to stop all non-work related contact with

4

> her immediately, and you agreed to comply. Failure to do so can result in a variety of steps the organization might be obligated to take including progressive discipline and referring the matter to Tampa Police.
>
> As a result of your apparent lapse in judgment, I have included copies of Policy B1.1 – Equal Opportunity, and B24.1 – Anti-Fraternization, and highlighted sections that you should familiarize yourself with in order to avoid a possible repeat of this behavior in the future.
>
> I trust that you have heard the employee and the organization loud and clear on this matter.

(BS# 001161); *see also* (BS# 001162-67).

23. The Plaintiff received no discipline for reporting Johnson's conduct to the City.

24. According to the Plaintiff, Johnson communicated through another employee that he was sorry for what happened and she accepted the apology. (Pl. 110:22-111:4). Thereafter, Johnson told the Plaintiff that "he was really sorry about what was going on." (Pl. 111:5-12). The Plaintiff responded that "it was okay," that Johnson "wasn't a murderer or a bad person," and he just "needed to work on" how he "dealt and approached" her. (Pl. 111:5-12).

25. But on June 2, 2016, the Plaintiff reported to Calderoni that she heard hearsay that Johnson was allegedly spreading rumors about her. (Pl. 42:1-7); (Marple 49:10-14) (BS# 000745). There was no report at this time that Johnson was directly communicating with the Plaintiff on non-work related matters or otherwise engaging in any harassment or other conduct based on sex. (BS# 000745).

26. The Plaintiff also reported to Calderoni for the first time on June 2, 2016 alleged conduct by other individuals, such as Mike Rafferty who she claimed approached her and exchanged words with her. (Pl. 42:8-15); (BS# 000745). The Plaintiff does not remember what

Rafferty said other than she did not like it. (Pl. 42:8-24). She does not know whether Rafferty's conduct was based on sex. (Pl. 42:20-22).

27. At one point the Plaintiff asked Calderoni if she could go to his office because it felt "tense" at work. (Pl. Ex. 4). According to the Plaintiff, the tension related to the fact that some individuals believed Calderoni showed her favoritism because he gave her a City t-shirt and had meals with her. (Pl. 61:13-63:4).

28. The next day, June 3rd, Calderoni reported the matter to Lubkan and Franco. (Marple 49:10-17). Calderoni also reported some behavioral issues that he had documented for the Plaintiff. (BS# 000745-47).

29. At some point, the Plaintiff entered into what she concedes was a mutual relationship with Marquis Wright, a City Utility Technician II (Interim Team Leader), but that relationship ended. (Pl. 48:4-7, 48:21-23).

30. On June 29, 2016, Wright approached Calderoni to disclose that he (Wright) was scared of the Plaintiff and felt harassed by her. (Marple 26:10-20, 44:9-22, 50:13-18, 53:18-20, 64:10-11); (Pl. 48:4-14, 49:8-11).

31. Among other things, Wright reported that the Plaintiff sent him text messages of a threatening nature. (Marple 26:10-20, 44:9-22, 50:13-18).

32. After receiving this complaint, Calderoni reported the matter to Franco. (Marple 44:9-22, 50:19-23, 51:10-16).

33. That same day, June 29th, Wright met with Franco and Leonard about his (Wright's) complaint against the Plaintiff. (Marple 44:9-22, 50:19-23).

34. Wright provided the City with several text messages that the Plaintiff sent him.

(Pl. 65:10-13, Ex. 5); (Marple 26:10-20, 50:19-23, 51:10-16, 52:13-15, 53:4-13). The text messages included:

> Fwd: Asking for it now so. . . Lemme know otherwise i am gone do what i originally planned. . Glad u picked up the phone bc trust you was gone have a bad night
> Fwd: U not gonna be able to run from this. . . . Like u do everything else
> Fwd: Yep. . . Bet that ass hush mouth nah. . . See where being selfish and nasty gets u. . . Im just as nasty if not even worse. . . You hurt me imma hurt you back
> Fwd: Why mr. Eli [Franco] want to meet with u? Did u say something to anybody
> Fwd: All your [sic] doing is further pissin me off

(Pl. 65:10-13, Ex. 5).

35. Based on the nature of Wright's allegations against the Plaintiff, Franco reported the matter to the City's HR on June 29, 2016. (Marple 50:24-52:4, 53:18-20); (BS# 000770).

36. Wright received no disciplinary action for making a harassment complaint. (Marple 64:7-65:3).

37. At or around the same time that Wright made a complaint against the Plaintiff, the Plaintiff made a complaint to Adam Mainzer of Techstaff that Calderoni was engaged in inappropriate conduct. (Pl. 50:12-17); (Marple 43:25-44:7).

38. Mainzer has no employee relationship with the City. *See* (Doc. 36 at ¶ 4); (Pl. 20:9-13).

39. At Mainzer's request, the Plaintiff drafted notes about Calderoni's alleged conduct. (Pl. 82:1-100:9, 104:18-105:12, Ex. 8). The last page of the exhibit is an alleged note from Johnson. (Pl. 105:13-106:9, Ex. 8).

40. According to the Plaintiff, Calderoni would comment that he was "attracted to

7

black women," that she looked "good" and "was pretty," and whether she "had intercourse over the weekend." (Pl. 96:7-97:9). He also allegedly asked the Plaintiff whether she strip danced before and if she made a lot of money. (Pl. Ex. 8). In addition to the comments, the Plaintiff claimed he touched her inappropriately in her private area, but does not remember when this happened or how often. (Pl. 99:19-100:8, Ex. 8). On other occasions, the Plaintiff claimed that he "hug[ged] and kiss[ed]" her. (Pl. 99:16-18, 104:18-105:7, Ex. 8).

    41.    On June 29, 2016, the same day that Wright made a complaint to the City about the Plaintiff's harassment of him, Crum was contacted by Mainzer and told that the Plaintiff was making a complaint regarding alleged conduct by Johnson and Calderoni. (Marple 43:25-45:12, 50:24-52:7, 56:2-9).

    42.    The City's HR initiated two concurrent investigations: one into Wright's complaint that the Plaintiff was harassing him, and one into the Plaintiff's complaint that Calderoni and Johnson were harassing her. (Marple 26:10-27:7, 30:10-31:7, 32:16-33:4).

    43.    On June 30, 2016, Crum and Kimberley Marple, Employee Relations Specialist Supervisor in the City's HR, interviewed Calderoni as part of HR's investigation into the Plaintiff's allegations. (Marple 3:16-21, 56:2-18); (BS# 000693-98).

    44.    In the interview, Calderoni admitted to engaging in some of the conduct that was alleged, but denied the other allegations that were made. (Marple 56:2-25). For example, he admitted to hugging the Plaintiff, but claimed he did that for everyone and that such acts were in his "nature." (BS# 000693). He also admitted to kissing the Plaintiff on the cheek a "few times." (BS# 000696). Calderoni further admitted to buying the Plaintiff food, but claimed this was something that he did for everyone. (BS# 000697).

45. On July 1, 2016, Crum and Marple met with the Plaintiff and Mainzer. (Marple 18:13-19:1, 21:20-22:3, 23:10-16, 57:6-15); (Pl. 49:24-50:11); (BS# 000681-90).

46. During the July 1, 2016 meeting, the Plaintiff provided the City copies of text messages from Johnson and Calderoni and other evidence that she believed supported her allegations. (Pl. Ex. 1, Ex. 2, Ex. 3, Ex. 4); (Marple 27:16-22, 31:22-32:15, 52:15-24).

47. The Plaintiff alleged that Johnson sent her text messages, a Facebook friend request, and a book titled "Dirty Little Secrets" which was delivered by another person. (Pl. 109:25-110:6, Ex. 7 at ¶ 7); *see also* (Pl. Ex. 2 at BS# 0016-22, Ex. 3); (Marple 50:1-12).

48. She also accused Calderoni of engaging in inappropriate conduct, including unwanted sexual advances and inappropriate touching, unwanted text messages, intimidation regarding employment status, and other conduct described above in her report to Mainzer. (BS# 000681-90); (BS# 000774-75).

49. As part of the concurrent investigation into Wright's complaint, the Plaintiff was questioned about the text messages Wright provided the City. (Marple 26:21-27:10); (Pl. 64:1-65:3).

50. The Plaintiff confirmed that she sent the text messages to Wright. (Pl. 65:10-13, Ex. 5).

51. Because the text messages were of a threatening and inappropriate nature, the Plaintiff was informed that she would no longer be permitted to perform services for the City through Techstaff. (Marple 27:23-28:11); (Pl. 21:6-10); (Doc. 36 at ¶ 49).

52. The City did not direct or request Techstaff to take any action with respect to the Plaintiff's employment with Techstaff.

9

53. The Plaintiff employment relationship with Techstaff remained unchanged. (Pl. 19:20-20:1). Techstaff did not provide the Plaintiff a new placement, but she does not know the reason. (Pl. 19:20-20:16).

54. At this July 1, 2016 meeting the Plaintiff informed the City's HR for the first time that Wright was allegedly coming to her house during work hours for the City and altering his work orders for the City. (Pl. 74:5-75:22); (Marple 53:21-54:3). The Plaintiff did not previously report any issues with Wright's time records. (Pl. 68:2-23).

55. Because falsification of time is not a discrimination or harassment complaint, an investigation into such conduct is handled at the department level. (Marple 28:16-29:13, 29:23-30:3, 54:10-22, 54:23-55:19). The matter was turned over to Leonard for an investigation to determine whether there had been a violation of Personnel Manual B28.2 which, if sustained, could lead to termination. (Marple 28:16-29:13, 29:23-30:3). This investigation did not find any inconsistencies with Wright's time records. (Marple 29:10-19, 33:19-34:19, 54:10-22). As a result, Wright received no disciplinary action. (Marple 29:10-19, 34:15-19).

56. The Plaintiff never accused Wright of any harassment based on sex or any other protected characteristic. (Marple 55:7-15).

57. Although the Plaintiff was no longer going to be working with the City, HR continued to investigate the Plaintiff's claims related to Johnson and Calderoni.

58. From July 6 to July 8, 2016, Crum and Marple interviewed Renee Surgeon-Jones, Work Order Technician, Linda Coleman-Davis, Work Order Technician, Wanda Hernandez, Water Distribution Planner/Scheduler, Yolanda Davis, Water Distribution

Planner/Scheduler, Shawn Thomas, Utility Technician III, and Demetrious Wilson, Utility Technician III as part of the investigation. (Marple 57:21-58:10); (BS# 000703-20)

59.     On July 21, 2016, Calderoni was interviewed by the City's HR a second time. (BS# 000699-702). During this interview, Calderoni was confronted with the text messages and other evidence provided by the Plaintiff. (Marple 31:22-32:11).

60.     The City's HR also conducted two interviews of Johnson, on July 26 and July 27, 2016, respectively. (Marple 58:19-25); (BS# 000674-80). Although Johnson initially denied much of the conduct, (BS# 000674-80), he was confronted with the text messages and other evidence provided by the Plaintiff. (Marple 31:22-32:11). Johnson thereafter admitted to continuing to communicate with the Plaintiff despite the prior directive. (BS# 000674-80).

61.     The investigation continued with Crum and Marple interviewing Ted Wagner, Safety & Loss Prevention Specialist, and Janalise Toole, TechStaff temporary employee, on August 2, 2016. (Marple 59:1-11); (BS# 000718-20, 000723-27).

62.     Based on the information discovered during the course of the investigation, the City prepared notice of disciplinary actions for Calderoni and Johnson. (Marple 31:3-17).

63.     The draft notice of disciplinary actions charged Calderoni and Johnson with potential violations of City Personnel Manual B1.1A(4)(d), Equal Opportunity for alleged sexual harassment and hostile work environment. (BS# 000774-75, 000784-85). Additionally, Johnson was charged with a potential violation of City Personnel Manual B28.2A(3)(d)(1), Moral Turpitude, for being untruthful in his statements to HR. (Marple 31:22-32:10); (BS# 000774-75, 000784-85).

64.     Based on their employment status with the City and the nature of the

11

contemplated disciplinary action, Calderoni and Johnson were entitled to a due process pre-disciplinary hearing to provide their side of the story prior to discipline being imposed. (Marple 31:10-21, 59:12-24).

65. On August 17, 2016, the City held a pre-disciplinary hearing for Calderoni. (Marple 59:12-14); (BS# 000774-75); (BS# 000671-73). After the hearing was conducted, Calderoni was informed that his employment would be terminated. (Marple 31:19-21, 59:25-60:8); (BS# 000774-75). Calderoni resigned in lieu of termination. (Marple 31:19-21, 59:25-60:8).

66. On August 18, 2016, the City held a pre-disciplinary hearing for Johnson. (Marple 60:9-13); (BS# 000784-85); (BS# 000670). Johnson was informed after the hearing that his employment would be terminated. (Marple 31:19-21, 60:9-22); (BS# 000784-85). Johnson resigned in lieu of termination. (Marple 31:19-21, 60:9-22).

Respectfully submitted,

/s/ Thomas M. Gonzalez
Thomas M. Gonzalez (Trial Counsel)
Florida Bar No: 192341
Nathan J. Paulich
Florida Bar No: 0085190
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 North Franklin Street, Suite 1600
Tampa, Florida 33602
Mail:  P. O. Box 639
Tampa, Florida 33601
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
tgonzalez@tsghlaw.com
npaulich@tsghlaw.com
Attorneys for the Defendant, City of Tampa

**CERTIFICATE OF SERIVCE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 25th day of March, 2019, by CM/ECF electronic filing to the Clerk of Court and to the following:

| | |
|---|---|
| Arnold S. Gaines | Yvette J. Harrell |
| Gaines & Nolan | The Law Office of YJ Harrell, PLLC |
| 2100 SE Hillmoor Drive, Suite 106 | 156 Frow Avenue |
| Port St. Lucie, Florida 34952 | Coral Gables, FL 33133 |
| asg@againeslaw.com; asg@gainesnolan.com | counsel@yhlegal.com |
| Attorney for the Plaintiff | Attorney for the Plaintiff |

/s/ Thomas M. Gonzalez
Attorney